## SNOW v. SMITH et al.

No. 3933. Opinion Filed November 24, 1914.

(144 Pac. 578.)

1. APPEAL AND ERROR—Habeas Corpus—Harmless Error—Custody of Child—Evidence in Rebuttal. During the trial of this case by the court, the defendant gave certain evidence which was competent but not highly material, and which reflected disadvantageously upon the plaintiff. Evidence was offered by plaintiff in rebuttal, and the court, while not specifically refusing the same, stated that, in considering the case, he would treat this evidence of defendant as specifically denied and contradicted by plaintiff. This was error. A party is entitled to introduce his rebuttal evidence, thus bringing the same into the case, so that it can be preserved and brought under review in case of an appeal. But in this case it will

not work a reversal: First, because no specific exception was taken to the action at the time; second, because, under the facts, the error was harmless.

2.  **HABEAS CORPUS—Custody of Child—Sufficiency of Evidence.** Under the facts of this case, discussed in the opinion, the court was right in refusing to give the custody of a minor child to its father.

(Syllabus by Brewer, C.)

*Error from Superior Court, Pottawatomie County;*

*Geo. C. Abernathy, Judge.*

*Habeas corpus* by Henry A. Snow against Melton Smith and others.  Judgment for defendants, and plaintiff brings error. Affirmed.

*Roscoe C. Arrington* and *J. L. Arrington,* for plaintiff in error.

*S. P. Freeling,* for defendants in error.

Opinion by BREWER, C.   The plaintiff in error, Henry A. Snow, sued out a writ of *habeas corpus* for the purpose of obtaining the custody of his minor son, a boy between six and seven years old at the time of the suit.  Melton Smith and Mary Smith, the child's maternal grandparents, and Roda C. Bean, its natural mother, were made respondents in the suit.  There are many pages of evidence brought to this court, all of which we have read, and, without undertaking to state it all, we think the facts may be briefly summarized as follows:  The petitioner Snow married the respondent Roda C. Bean, then named Smith. They lived together about nine months, when a disagreement between them arose and a separation occurred; the wife returning to her father's home, where, within about three months thereafter, she gave birth to the boy in question.  The families lived in the same neighborhood at the time, and the mother, with her child, remained with her parents, and later they removed to New Mexico, where they resided a couple of years, and in the meantime the petitioner Snow procured a divorce from his wife in the courts of Pottawatomie county, in which nothing was said or asked concerning the custody of the child.   Later the Smiths

moved back into Pottawatomie county, bringing the petitioner's divorced wife and child back into the neighborhood, where they resided for some years, retaining and caring for the child, and about a year before the institution of this suit the divorced wife married a man by the name of Bean. Until after this occurred, and in fact until a very short time before the filing of the suit, the custody, care, and welfare of the child seems to have given petitioner very little concern. When the petitioner did become concerned, however, he became very active in the matter and made demands upon the grandparents concerning the child, which, considering his former indifference, became offensive to them, and a disagreement arose between him and them. Until the divorced wife's marriage to Bean, she and the little boy lived with and were supported by her parents, the Smiths, and after her marriage, the two families resided very near together, and the little boy lived a portion of the time with each of them. He was a small, weakly child at birth, and the mother and grandparents nursed him and cared for him until he grew up into a strong, healthy boy. The petitioner in the meantime, and while these other people were caring for the child, when it could not care for itself, contributed little, if anything toward its well-being. At the time of suit the little boy had started to school, and the grandparents had other children, older than he, to send to school with him. It may be said here that both the petitioner and the respondents are respectable farmers, reasonably well to do, and there is no suggestion in the record of any moral delinquencies attaching to any of them. The petitioner is a man about 45 years of age, living on a small farm alone, save as to his mother, a woman about 75 years of age, who is an invalid and practically helpless. It appears that the petitioner takes care of his farm, also the house, and performs the greater part of the ordinary household duties. Of course, under this situation, it is obvious that the boy would be of considerable advantage to him, if brought into his household. The little fellow, who seems to be unusually bright, was interrogated by the judge, and it appears that he is well cared for and happy and progress-

ing nicely in his present surroundings. Of course it is but natural that his preference would be to stay with those who had cared for and loved him all his life.

Without going into the *minutiae* of the testimony, which has its lights and shadows, with pathetic situations here and there, as is usual in such cases, and which always weigh with the chancellor when arriving at a decision, the above, we think, sets out the material facts of the situation. With the parties all before him, the grandfather, grandmother, and the mother upon one side, and the father upon the other, seeing them and hearing them, observing doubtless the flashes of anger and the looks of yearning love, as the contending forces battled for the child, when trying to decide what was best for it, in the light of all the testimony, of which he was far better able to judge than we are, he made an order refusing the prayer of the petition, which in fact was refusal to disturb the situation in which the boy had grown up thus far. The order in part is as follows:

"The order of the court will be that the writ of *habeas corpus* prayed will be denied, with the right of the father to visit his child, to take it out with him, take it to his home for visits at any reasonable time, and only subject that he must not take it away from the grandparents' home at such time that it will interfere with its going to school. He will be permitted to make it such presents of money and clothing as he may see fit, with the understanding that as conditions change with the age of the child and size, or other conditions, the father will in course of time be awarded the custody of the child. * * * Petition for writ of *habeas corpus* denied, except in so far as rights are given to the father not heretofore enjoyed by him; and without prejudice to such order of this or any other court as may seem right under such conditions as may develop in the future."

Two reasons are advanced by the plaintiff in error for a reversal of this case. One is that the court refused to hear certain rebuttal evidence. This complaint is based upon the following facts: During the examination of Mrs. Bean, she made certain statements reflecting upon the petitioner and his mother, in explaining why she left home and went to her father's just a short time before her child was born; and, when the evidence was

otherwise all in, the petitioner offered to produce evidence contradicting the testimony of Mrs. Bean relative to the treatment given her by the petitioner and his mother prior to the separation. When this offer was made, the court stated that, in the consideration of the case, he would assume that such testimony would directly contradict and deny in all and every particular the testimony referred to. No exceptions were taken to the ruling of the court, and this fact precludes the petitioner from predicating error thereon. However, we feel that we ought to at least criticize this ruling. Although a case is being tried to the court, a party is entitled to offer his evidence in rebuttal, thus bringing the same into the case so it can be preserved in case of an appeal. But even if proper objections had been made and the same erroneously overruled, still, under the facts of this case, we should hold the error harmless. The testimony sought to be contradicted was competent, but it was not highly material; and, taking the facts of the case as they otherwise stand, we may eliminate the portion of the testimony under discussion entirely from consideration, and yet fully agree with the judgment of the court; or we may consider it as fully and specifically contradicted, and yet our view of the case would in no wise be changed.

The petitioner in his brief relies upon section 4899, Comp. Laws 1909 (section 4368, Rev. Laws 1910), which says, among other things, that "the father of a legitimate unmarried minor child is entitled to its custody, services and earnings, etc.;" but we think, in a situation of the kind presented here, that section 4915, Comp. Laws 1909 (section 4384, Rev. Laws 1910), is more applicable. It follows:

"The husband and father, as such, has no rights superior to those of the wife and mother, in regard to the care, custody, education and control of the children of the marriage, while such husband and wife live separate and apart from each other, and when they so live in a state of separation without being divorced, the district court or judge thereof upon application of either, may grant a writ of *habeas corpus* to inquire into the custody of any minor unmarried child of the marriage, and may award the custody of such child to either, for such time and un-

der such regulations as the case may require. The decision of the court or judge must be guided by the rules prescribed in section 3331 in the chapter on 'Guardian and Ward.' "

Section 4942, Comp. Laws 1909 (section 3331, Rev. Laws 1910), provides in part:

"In awarding the custody of a minor. * * * the court or judge is to be guided by the following considerations: First. By what appears to be for the best interests of the child in respect to its temporal and its mental and moral welfare; and if the child be of sufficient age to form an intelligent preference the court or judge may consider that preference in determining the question. Second. As between parents adversely claiming the custody or guardianship, neither parent is entitled to it as of right, but other things being equal, if the child be of tender years, it should be given to the mother; if it be of an age to require education and preparation for labor or business, then to the father."

The next section undertakes to provide for a situation, where the two claimants are equally entitled in other respects, as to whom preference should be given, and says that the first preference should be given to a parent, and it is contended here that under that statute the father is, as a matter of law, entitled to the child as against its grandparents. That would be true if everything else were equal as between the two, which we do not consider to be so; but in this case the refusal to disturb the present arrangements for the boy practically amounts to a decision between the father and mother. The mother lives very close to the grandparents. The child seems to divide time between the two places. He has the advantage of much of his mother's companionship, direction, and advice, in connection with the grandparents, with whom she is in constant and affectionate touch. To take the child away from these surroundings is no more and no less than taking him from his mother; and considering all the evidence in the case, the care and solicitude upon the one hand, and the, at least, seeming indifference upon the other, the boy's present happy and contented state among people who love him and whom he in turn loves, with other children older than he to take him and go with him to school, under all these circumstances we believe like the trial judge believed, that it would not

be for the best interest of the child, nor would it be right as between the parties, to take this boy and transfer him to strange surroundings, and give him even to a father who loves him, but who, in the very nature of things, is almost a stranger to him, and put him in a home where there are no other children and no woman, save a helpless grandmother, whose acquaintance with the child is evidently very limited. So we think the court was right, and that its order works no great hardship, for if conditions change, or when the boy gets older and is better able to understand, should it become expedient to transfer the possession of the child to the father, it can be done, as was held in the order appealed from.

There being no substantial and material error in the case, the judgment should be in all things affirmed.

By the Court: It is so ordered.